## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

RAY LON JONES,                    )
                                  )
        Plaintiff,        )
                                  )
v.                                ) Case No. CIV-14-059-FHS-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
        Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Ray Lon Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 14, 1948 and was 64 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade. Claimant has worked in the past as the owner of an automobile repair shop. Claimant alleges an inability

3

to work beginning March 10, 2008 due to limitations resulting from diabetes, glaucoma, and macular degeneration. Claimant also asserts he suffers from sleep apnea, PTSD, obesity, and hearing problems.

**Procedural History**

On December 1, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge David Engel ("ALJ") on August 17, 2012 by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. The ALJ issued an unfavorable decision on August 28, 2012. On December 16, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform medium work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) arriving at an

RFC which lacks a limitation in lifting or handling associated with severe peripheral neuropathy of the arms and hands; and (2) finding Claimant's acquired skills were transferable to a significant number of alternative light and sedentary jobs with little change in work processes, tools, industry, or work setting.

### RFC Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of diabetic neuropathy, sleep apnea, morbid obesity, glaucoma, macular degeneration, and decreased hearing. (Tr. 13). He concluded that Claimant retained the RFC to perform medium work. In so doing, the ALJ found Claimant was able to understand, remember, and carry out simple to moderately detailed instructions in a work-related setting and was able to interact with co-workers and supervisors under routine supervision. Id. After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of service station attendant, maintenance scheduler, and repair order clerk, all of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 18). Based upon these findings, the ALJ concluded Claimant was not disabled from March 10, 2008 through the date of the decision. Id.

Claimant contends the ALJ's RFC assessment was in error.

Claimant first asserts the ALJ failed to properly evaluate the opinion evidence of Dr. Kenneth Trinidad.  On August 6, 2012, Dr. Trinidad completed a medical source statement on Claimant's functional limitations.  He determined Claimant could sit for 30 minutes at one time in an 8 hour workday, stand for 10 minutes at one time in an 8 hour workday, and walk for 10 minutes at one time in an 8 hour workday.  He also found Claimant could sit for four hours total in an 8 hour workday, stand for one hour total in an 8 hour workday, and walk for 30 minutes total in an 8 hour workday.  Dr. Trinidad also determined Claimant could occasionally lift/carry up to 10 pounds.  (Tr. 534).

Dr. Trinidad also found Claimant was limited in the use of his feet for repetitive movements and the use of his hands for grasping and fingering.  He estimated Claimant could occasionally bend, squat, and reach but never crawl or climb.  He totally restricted Claimant in working at unprotected heights, markedly restricted Claimant in working around vibrations, and moderately restricted Claimant in working around moving machinery, exposure to marked changes in temperature and humidity, and driving.  In the portion of the form requiring a recitation of his objective findings supporting his RFC evaluation, Dr. Trinidad wrote "[b]ilateral upper and lower extremity peripheral neuropathy and sleep apnea."

6

(Tr. 535).

The ALJ gave "little weight" to Dr. Trinidad's medical source statement. His basis for doing so was "[t]he absence of an examination document from Dr. Trinidad" which the ALJ found to "suggest[] his source statement is based solely on the claimant's self-description of events several years after his DLI." He also determined the other medical evidence did not support the physical limitations found by Dr. Trinidad. (Tr. 16). The ALJ failed to reference or recognize that Dr. Trinidad prepared an examination report dated August 6, 2012. In the report, Dr. Trinidad stated that he reviewed the medical records from the VA. Dr. Trinidad set forth that his examination of Claimant's feet revealed dysesthesias of the feet bilaterally and weakness in toe standing. He had normal range of motion in the ankles and toes. Examination of Claimant's hands revealed normal range of motion in the wrists and fingers. He had dysesthesias throughout all five digits and loss of fine motor movement in the digits and weakness in wrist strength bilaterally. Grip strength tested at 22 kilograms bilaterally. (r. 538).

Dr. Trinidad noted his "most pressing problem" to be diabetic neuropathy. He noted significant nerve impairment to both hands and both feet with parethesias and dysesthesias and sensory changes

7

and weakness in grip strenght, wrist strength, and in the feet bilaterally. He determined these conditions causes severe problems in Claimant's use of his hands for any work activities including light duty and repetitive work. He also found an impairment in Claimant's ability to sit or stand for more than short periods at a time. (Tr. 539).

The basis for rejecting Dr. Trindad's opinion was erroneous. Dr. Trinidad did examine Claimant and provide documentation of that examination. While the report was authored after Claimant's date of last insurance, his condition of diabetic neuropathy extended prior to this time to December of 2009. The condition related back to this time period. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). The reasons provided for rejecting Dr. Trinidad's medical opinion were not legitimate. On remand, the ALJ shall reconsider the opinion in light of the supporting examination documents.

Claimant also contends the ALJ failed to consider the evidence

of Claimant's neuropathy and its functional effects. While the ALJ found Claimant suffered from severe diabetic neuropathy, he did not cite to the various reports which explained the nature and extent of the limitations provided by the condition. For example, Dr. Padmaja Vasireddy found in a report from January 29, 2009 that Claimant had polyneuropathy on an EMG study of the left upper extremity. (Tr. 355). The only portion of this consult which the ALJ cited to in his decision was the x-ray results showing Claimant had cervical spondylosis in C4-C7. (Tr. 15). An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

The ALJ appears to have disregarded or ignored much of the evidence concerning any limitation brought about by Claimant's neuropathy despite finding that the condition represented a severe impairment. For instance, the VA medical records indicate Claimant had weakness in this hands which was worse when his hands were left down, he dropped things, and reported pain at night. An examination revealed reduced grip strength at 3/5. EMG testing was ordered to assess the parathesia and weakness of the hands and, when it was received, the EMG showed some abnormalities. (TR. 467-

68, 459). Instead, the ALJ discussed only findings showing negative testing for rheumatoid arthritis, which was not considered the source of Claimant's hand and arm problems. (Tr. 16).

In assessing RFC, the Commissioner considers a claimant's abilities to meet the demands of work despite her impairment(s). 20 C.F.R. § 404.1545. The assessment is based upon all relevant medical and other evidence in the record and includes consideration of the limitations caused by all of the claimant's impairments, including impairments which are not "severe" as defined in the regulations. Id. at § 404.1545(a & e). The assessment considers physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. Id. § 404.1545(b, c, d). By failing to consider the vast majority of the evidence pertaining to Claimant's hand and arm limitations brought about by his diagnosed and admittedly severe neuropathy, he has failed to fulfill his obligations under the regulation in arriving at the RFC. He included no limitation in his RFC for hand or arm neuropathy. On remand, the ALJ shall consider the medical

10

evidence on this condition and ascertain the level of functional limitation suffered from Claimant due to neuropathy and reassess his RFC findings.

**Transferability of Claimant's Skills**

Claimant asserts the ALJ failed to elicit vocational testimony to demonstrate that Claimant as a person over 60 acquired transferable skills to light and/or sedentary jobs. In order to rely upon light or sedentary work as a basis for denying benefits to a person over 60, the ALJ must find that Claimant acquired skills from his past work which could be used to "meet the requirements" of the identified jobs without the need for additional occupationally significant skills. 20 C.F.R. § 404.1568(d)(1).

The vocational expert identified semi-skilled SVP 3 work as a service station attendant which is classified as light work, maintenance scheduler which is classified as sedentary work, and a repair order clerk which is also classified as sedentary work. (Tr. 18). The ALJ did not explore in his questioning as to whether there would be a need for additional occupationally significant skills for these jobs and did not make findings on this required element. The *Dictionary of Occupational Titles*, however, indicates additional skills may be required in order to "meet the

11

requirements" of these jobs identified by the vocational expert. On remand, the ALJ shall inquire of the vocational expert as to any additional occupational skills required for these jobs.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE